UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-22268-CIV-MORENO/DUBÉ

RONALD ROYAL,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Defendant (D.E. #13) and the Motion for Summary Judgment filed by the Plaintiff (D.E. # 16) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Ronald Royal (hereinafter "Royal" or "Plaintiff").

### I. FACTS

On March 21, 2006, the Plaintiff filed applications for disability insurance benefits and supplemental security income[1], alleging a disability onset date of December 6, 2005 (R. 36-38).[2] The applications were denied initially and on reconsideration. (R. 199-200, 218-221, 228-231). A

---

[1]. The actual application for supplemental security income benefits is not contained in the record, however, it is referred to by the ALJ in his decision. (R. 21).

[2]. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

1

hearing was held on December 22, 2008. (R. 444-474). Following the hearing, the ALJ issued a decision denying the request for benefits. (R. 18-31). A request for review filed with the Appeals Council was denied. (R. 7-10).

The Plaintiff, 47 years of age at the time of the ALJ hearing, testified he had been educated up to the 9th grade in Georgia. (R. 447-448). Royal stated his past work experience included driving a six-wheel truck for Home Gas for 14 years, working in construction, and transporting patients. (R.448- 449). The Plaintiff testified he could not remember if he stopped working in 2003 or 2004, however, counsel for the Plaintiff indicated he stopped working in construction in 2002 and performed some work as a day laborer in 2003 and 2004. (R. 449-450). The Plaintiff testified he stopped working because of knee pain, diabetes, and depression. (R. 450-451). Royal further indicated he had not seen a doctor for depression but had seen a doctor for his knee pain and diabetes. (R. 451). Royal testified he was being treated for his knee pain with Celebrex and was being treated for diabetes with Insulin and Glipizide. (R. 451).

Royal further testified he had a driver's license and while he owned a car, it was not working. (R. 451). The Plaintiff claimed his daughter drove him places. (R. 452). Royal stated he lived with his daughter, his grandchild, and his daughter's mother. (R. 452-453). The Plaintiff further stated he slept 8 hours during the night and all day because the medication made him drowsy. (R. 453). Royal testified his daughter did the dishes, laundry, cooking, housework, and went grocery shopping. (453).

According to the Plaintiff, he could walk "half a block, maybe not a half a block" due to constant knee pain; stand for about 10 minutes; sit for about 4 or 6 hours at the most; and lift 10 to 15 pounds at most due to tingling in his hands. (R. 454-455). The Plaintiff stated he was not taking any medication for the tingling. (R. 455). The Plaintiff testified he napped from 1 to 24 hours during

the day and ate between naps, he weighed about 205 pounds, and was told to follow a diet due to diabetes. (R. 455-456).

The Plaintiff stated in 2002 he fell off the scaffolding from the second story, hit his head and hurt his left knee. (R. 456). When asked to described the pain, the Plaintiff testified it was a throbbing burning pain. (R. 457). Counsel for the Plaintiff noted the Plaintiff was sitting with his left knee extended and when asked if the Plaintiff always sat with his knee extended, Royal answered in the affirmative. (R. 457). The Plaintiff testified he was wearing a knee brace and could never bend his knee because of the pain. (R. 457). The Plaintiff indicated he could not stoop or climb stairs. (R. 457-458). Royal testified he had uncontrolled blood sugar at a level of 300. (R. 458). The Plaintiff indicated he was given a double dose of insulin. (R. 459).

Counsel for the Plaintiff asked if Royal could read and Royal testified he knew little basic words, but never read the newspaper, could not read the titles of the newspaper articles and could not read a job application. (R. 459). The Plaintiff testified he had problems with math, specifically with multiplication and division. (R. 459-460). Royal indicated his daughter paid the bills, he had never used a checkbook, and had never signed up for electric bills. (R. 460). The Plaintiff asserted he received his driver's license by passing an oral test. (R. 460). When asked why he dropped out of school in the 9th grade, the Plaintiff answered that he could not read. (R. 460).

Counsel for the Plaintiff asked if after having bumped his head, the Plaintiff had any more memory problems. (R. 460). The Plaintiff stated it was difficult for him to remember something that happened two weeks or a month ago and sometimes he could remember things from the previous day and sometimes he could not. (R. 460). Royal testified he had trouble following a television show due to a bad memory. (R. 461). The Plaintiff claimed his medication made him drowsy and dizzy. (R. 461).

Dr. Allan Selbst, a medical expert, testified he specialized in internal medicine, was a certified medical doctor, and a senior diplomat in the American Board of Disability Analysts. Additionally, he testified that he was hired by counsel for the Plaintiff to testify at the hearing, but was willing to be an impartial witness. (R. 462). The ALJ asked if the Plaintiff's impairments considered singularly or in combination met or equaled a listing and Dr. Selbst testified the Plaintiff did not met or equal a listing. (R. 464). Dr. Selbst testified based on the entire medical record and specifically an MRI done in 2002 and 2006, the Plaintiff had significant problems with his left knee. (R. 464). The medical expert testified that an MRI taken in 2002, indicated a partial tear of two ligaments and an MRI taken in 2006, indicated a tear in the meniscus and the consultative examinations indicated significant limitations in range of motion. (R. 465-466). In regards to the Plaintiff's diabetes, the expert stated blood sugars running 300 to 400 were extremely bad because it could lead to end-organ diseases, fatigue, tiredness, and the inability to use sugar for energy. (R. 466-467).

The medical expert testified that the Plaintiff could frequently lift 10 to 15 pounds and occasionally lift 20 pounds, he could sit anywhere from 4 to 5 hours in an 8-hour day and he could stand for 15 to 20 minutes. (R. 467). Further, with respect to sitting, due to the Plaintiff's decreased range of motion, the medical expert testified he would not necessarily be able to sit at a desk unless he had the ability to extend his knee. (R. 468-469). Dr. Selbst stated the Plaintiff could not stoop, kneel or crawl and while he could occasionally climb stairs, he would need a support device. (R. 469). The Plaintiff would not be able to climb scaffolding or a ladder. (R. 469).

The medical expert testified there were contradictions in the physical and consultative examinations and specifically noted the evaluations for Dr. Kahn and Dr. Whodeck stating the evaluation for Dr. Kahn revealed significant limitations with decreased range of motion and painful

4

range of motion. (R. 470). The medical expert testified Dr. Whodeck did a very "skimpy evaluation" as he did not do a review of systems and did not ask if the Plaintiff had any pain. (R. 471). The medical expert testified he did not know if the residual functional capacity (hereinafter "RFC") evaluation was completed by a doctor as it was simply filled out by, Carol DuVall. (R. 471). Dr. Selbst testified he disagreed with the RFC findings that the Plaintiff could stand for 6 hours in an 8-hour day based upon the imaging studies, medical records, and his symptomology throughout the years. (R. 471). The medical expert stated he believed the RFC incorrectly noted that the Plaintiff did not have postural limitations. (R. 471-472).

Regarding the Plaintiff's illiteracy, the medical expert testified he reviewed the psychological evaluation and it was consistent with illiteracy. (R. 472). The medical expert testified an I.Q. of 62 was "somewhat of the I.Q. of a child." (R. 472). Further, the medical expert testified that it was not the Plaintiff's medication of Celebrex that caused drowsiness, but rather the Plaintiff's uncontrolled blood sugar. (R. 473).

When asked by the ALJ what specific medical evidence Dr. Selbst used to find that the Plaintiff could not stand up for 2 hours, the medical expert testified he looked at the MRI taken in 2006, X-ray, uncontrolled diabetes and painful range of motion. (R. 473-474).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to

support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry

ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that he is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ erred in failing to assess the Plaintiff's mental retardation, learning disorder, reading disorder, arithmetic disorder, first grade reading level and second grade math level, and obesity as severe impairments.

The determination of whether an impairment is severe or not at step two of the sequential analysis is a threshold inquiry. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). The court in McDaniel elaborated on the requirements for a finding of severity as follows:

7

> It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

McDaniel, 800 F.2d at 1031; see also, Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987). It is the duty of the ALJ to fully develop the record. See, Graham v. Apfel, 129 F.3d 1420, 1422-23 (11th Cir. 1997). Development of a full record may include ordering a consultative examination to enable the ALJ to make an informed decision. Hollawday v. Bowen, 848 F. 2d 1206, 1209 (11th Cir. 1988); West v. Barnhart, 300 F.Supp.2d 1264, 1271 (S.D. Fla. .2003).

In the instant matter, this Court notes that in analyzing the Plaintiff's mental retardation, learning disorder, reading disorder, arithmetic disorder, first grade reading level and second grade math level and obesity as impairments, the ALJ evaluated the four functional areas as required by the regulations. 20 C.F.R. § 404.1520a. The regulations require the four individual areas to be examined as: "... [a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a (c)(3). The regulations further require that if the ALJ determines the limitations in the first three categories to be "mild" or "none," and that the individual did not have episodes of decompensation, the ALJ will reach the determination that the mental impairment was not severe. 20 C.F.R. § 404.1520a (d)(1).

The ALJ reviewed the Plaintiff's functional areas in activities of daily living; social functioning; and concentration, persistence or pace and found the Plaintiff had mild restrictions. (R. 26-27). Furthermore, the ALJ found the Plaintiff had no episodes of decompensation. (R. 27). The ALJ noted Royal was independent in performing his activities of daily living, he could complete self-

care without supervision and was able to independently take care of his personal hygiene, dressing, and grooming. (R. 26). Additionally, while Royal had some mild difficulties in social functioning, the ALJ concluded he was capable of performing work with more than occasional interaction with the public. (R. 26). In regards to the Plaintiff's concentration, persistence and pace, the Plaintiff's memory had been reported as fair, was able to understand, remember and carry out simple instructions, and able to manage routine tasks and follow a schedule. (R. 27).

The ALJ's findings in the four functional areas were supported by the evidence of record. The ALJ cited to the consultative examination performed on June 5, 2006, by Larry Benovitz, M.D., a Board certified psychiatrist and neurologist, who indicated the Plaintiff was diagnosed with depression, not otherwise specified, reading disorder, and illiteracy, rule out mild mental retardation. (R. 95). Dr. Benovitz also noted the Plaintiff was not under psychiatric treatment nor was he taking psychotropic medication. (R. 95).

Moreover, while the ALJ noted the testimony of Dr. Selbst, who opined that the Plaintiff's I.Q. score was that of a child, the ALJ subsequently rejected the medical expert's opinion stating Dr. Selbst's "extreme limitations are inconsistent with and contrary to the medical evidence of record." (R. 29). Thus, the ALJ appropriately assessed the Plaintiff's mental impairments and determined that despite the Plaintiff's severe impairment of depression, the Plaintiff had only mild limitations in the four functional areas.

Furthermore, as noted by the Defendant, obesity was not documented as an alleged impairment nor was there any testimony by the Defendant regarding Royal's obesity in relation to severity. The Plaintiff merely testified that he weighed 205 pounds and was on a diet. (R. 456). Lastly, as the ALJ found Dr. Selbst's testimony to be contrary to the medical evidence of record, the

9

medical expert's opinion regarding the Plaintiff's weight as a limiting factor on his ability to stand a long time as well as a factor for diabetes, was rejected. (R. 29, 469).

This Court finds that the ALJ assessed the entirety of the objective medical evidence, including the conditions Royal contended were severe impairments, and in so doing the ALJ correctly determined the Plaintiff had the severe impairments of back and knee pain, diabetes mellitus and depression. The Plaintiff's contention that the ALJ erred in failing to assess the Plaintiff's mental limitations and obesity as severe impairments is without merit.

The Plaintiff's second contention is that the ALJ erred in not evaluating whether the Plaintiff's mental retardation met the requirements of Listing 12.05. Listing 12.05 states as follows:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. § 404, Subpt. P, App. 1.

To meet or equal listing 12.05C, a plaintiff must demonstrate, "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. at 12.05C. Additionally to meet the requirements of 12.05D, a plaintiff must demonstrate as follows:

> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration.

Id. at 12.05D.

  In the instant matter, the Plaintiff was found to have a full scale I.Q. of 62, a verbal I.Q. of 65 and performance I.Q. of 64 which is within the listing range by Dr. Isom, a licensed psychologist who performed a psychological evaluation on September 28, 2007. (R. 195-198). However, the Eleventh Circuit has held, "...a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior. Lowery v. Sullivan, 979 F. 2d 835, 837 (11th Cir. 1992), citing to, Popp v. Heckler, 779 F. 2d 1497, 1499 (11th Cir. 1986).

  In this case, Dr. Isom noted the Plaintiff's work history in relation to the occupational evaluation and stated, "He has achieved relatively good in his occupational success throughout his adult life, until he injured his knee while working as a Construction Worker, when he fell off a structure." (R. 197). Dr. Isom further stated, "Mr. Royal is a mild-mannered, easy to get along with person that should experience no difficulty with hands-on task[s], with verbal instructions." (R. 198).

  The assessment of Dr. Isom regarding the Plaintiff's functional abilities mirror the evidence of record which illustrated the Plaintiff had been performing several jobs such as labor work, driving and transporting patients. (R. 41-45). Indeed, as noted by the ALJ, "...testimony from the claimant indicates a marked curtailment of even simple daily activities, but the evidence as a whole does not substantiate any good cause for such isolation and inactivity, apart from the claimant's own preference." (R. 29). Thus, despite any alleged mental impairments, the Plaintiff was able to

maintain several jobs from 1996 through 2002. (R. 41-45).

Lastly, the Plaintiff cited to Hodges v. Barnhart, 276 F.3d 1265 (11th Cir. 2001) whereby the Court held "[t]his circuit implicitly recognized that a claimant meets the criteria for presumptive disability under Listing 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 and evidence of additional mental or physical impairment."(Id. at 1269). In Hodges, the ALJ did not presume from the evidence that the claimant manifested a mental disability prior to the age of twenty-two and the court held the failure to presume a mental disability was in error. (Id. at 1269). However, unlike Hodges, the evidence of record in this case fails to contain a valid I.Q. score.

As the Defendant properly notes, during the same examination which determined the Plaintiff's I.Q., Dr. Isom, the examining psychologist stated as follows: "...this score may not reflect his true ability. His true ability is inhibited by his inability to understand word meaning. He is probably functioning in at least the Borderline range of intellectual ability." (R. 196). Thus, by Dr. Isom's own evaluation, the I.Q. score did not reflect the Plaintiff's true ability and therefore, it was an inaccurate reflection of the Plaintiff's abilities. Accordingly, it is the opinion of this Court that the ALJ did not err in finding that the Plaintiff did not meet or equal a listing impairment.

The Plaintiff's third point of contention is that the ALJ improperly applied the medical-vocational guidelines (the Grids) in finding that the Plaintiff was not disabled. An ALJ is required to consult with a vocational expert when the claimant's exertional limitations prevent the claimant from performing a full range of employment or when a claimant has nonexertional impairments that significantly limit basic work skills. Phillips v. Barnhart, 357 F. 3d 1232, 1242-1243 (11th Cir. 2004). The Grids are only appropriate when each variable on the appropriate grid matrix accurately

describes the claimant's situation. Walker v. Bowen, 826 F. 2d 996, 1003 (11th Cir. 1987). Testimony from a vocational expert is highly valued and commonly obtained in order to establish the availability of suitable alternative jobs for disability claimants. Holley v. Chater, 931 F. Supp. 840, 851, (S.D. Fla. 1996). Further, the ALJ has the obligation of developing a full and fair record regarding the vocational opportunities available to a claimant. Foote v. Chater, 67 F. 3d 1553, 1558 (11th Cir. 1995), citing Allen v. Sullivan, 880 F. 2d 1200, 1201 (11th Cir. 1989).

The use of the grids is appropriate under step 5 unless the claimant is unable to perform a full range of work at the given residual functional level or if the claimant has non-exertional impairments that significantly limit basic work skills. Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004). "Significantly limit basic work skills" has been interpreted as limitations which would prohibit the person from performing a "wide range" of work at the given work level. Id. at 1243. If the ALJ makes a determination that the nonexertional limitations do not significantly limit basic work skills, the ALJ may properly rely on the grids to determine if the claimant is disabled. Id. However, this requires a specific finding by the ALJ. Id. at 1244, quoting, Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant matter, the ALJ properly determined that the Plaintiff retained the residual functional capacity to perform a full range of unskilled medium work. (R. 31). With regard to the Plaintiff's limitations, the ALJ stated as follows:

> The record, as noted, has shown little in the way of significant objective abnormalities, and the divergence between the claimant's complaints and the objective clinical findings have been attributed to his situational depression and emotional issues that impose no limitations. The record does not confirm that he receives any type of treatment, other than routine medication.

13

(R. 29). The ALJ further stated:

> It appears from a strictly psychiatric point of view that he is able to independently execute routine activities of daily living, effectively engage and relate to others including public and authority and concentrate and recall information appropriately and stick with basic tasks. The claimant was primarily limited by the alleged physical complaints. Any disruption in functioning due to the alleged psychiatric symptoms is expected to be mild and/or transient.

(R. 29).

The ALJ found that the Plaintiff could not perform any past relevant work that included work as a Truck Driver, DOT #905.697-010, heavy in exertion and unskilled in nature, with an SVP of 2; and Construction Worker, DOT#869.664-014, heavy in exertion and semi-skilled, with an SVP of 4. (R. 30). However, the ALJ found the Plaintiff could perform unskilled medium work with the restriction of simple tasks in a routine setting. (R. 31). The ALJ's determination was based on an overall review of the record, and under such circumstances this Court has previously held that the use of Grids is proper. Coston v. Astrue, 2010 WL 3834015 (S.D. Fla. 2010). Accordingly, the Court does not find that error is present.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **AFFIRMED**. Accordingly, the Motion for Summary Judgment filed by the Defendant (D.E. #13) should be **GRANTED** and the Motion for Summary Judgment filed by the Plaintiff (D.E. #16) should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of

this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Federico A. Moreno, Chief United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this __28__ day of February, 2011.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE